IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
3RD

FILED

KAREN BOWEN                                                                 PLAINTIFF 3:37

VS.                       NO. CI2006-8697

UNUM LIFE INSURANCE COMPANY OF AMERICA             DEFENDANT

4:06CV001077GH

## COMPLAINT

Comes the Plaintiff, Karen Bowen, by and through counsel, Harrill & Sutter, P.L.L.C., and for her Complaint, she states:

### Parties and Jurisdiction

1. Plaintiff is a resident and citizen of Pulaski County, Arkansas, who worked for UAMS.

2. UNUM Life Insurance Company of America is a disability insurance carrier, who provided Plaintiff with insurance benefits. This action is brought for breach of contract, bad faith, and deceptive trade practices. Accordingly, this Court has subject matter jurisdiction, as well as personal jurisdiction over the parties. Venue is proper.

### General Allegations of Fact

3. While working for UAMS, Plaintiff was covered under a disability insurance policy issued by the Defendant.

4. Plaintiff met all essential eligibility requirements.

5. While covered under the policy, Plaintiff became, and remains today, completely disabled.

6. However, Defendant, without legal justification, refuses to pay Plaintiff disability benefits lawfully due her.

7. In fact, as reflected by Exhibit A, attached hereto, Defendant routinely places its own profit motives ahead of its insured in bad faith.

8. Defendant's actions constitute a deceptive trade practice, as well.

WHEREFORE, Plaintiff prays for appropriate compensatory damages, punitive damages, for all appropriate penalties due under state law, for costs, and for reasonable attorney's fees, for a trial by jury, and for all other proper relief.

Respectfully submitted,

HARRILL & SUTTER, P.L.L.C.
Attorneys at Law
Post Office Box 26321
Little Rock, Arkansas 72221
(501) 224-1050 FAX (501) 223-9136
Attorneys for the Plaintiff(s)

By: _____
Lucien Gillham, Ark. Bar No. 99199

g:\doc\bowen\cplt.doc

Worcester, Massachusetts

# Provident Life and Accident Insurance Company
NAIC Company #68195
Chattanooga, Tennessee

NAIC Group # 0565

November 18, 2004

Contents

| Topic | Page |
|---|---|
| Salutation | 1 |
| Foreword | 2 |
| Background and Scope of Examination | 2 |
| Profile of the Companies | 4 |
| Claim Selection Methodology | 5 |
| Areas of Concern | 6 |
| Plan of Corrective Action | 10 |
| Report Submission | 14 |
| Exhibit A | 15 |
| Exhibit B | 17 |
| Exhibit C | 18 |
| Exhibit D | 19 |

EXHIBIT A

# RACKEMANN, SAWYER & BREWSTER

PROFESSIONAL CORPORATION
COUNSELORS AT LAW
ESTABLISHED 1886

## ONE FINANCIAL CENTER
## BOSTON, MASSACHUSETTS 02111-2659

TELEPHONE 617-542-2300
FACSIMILE 617-542-7437
www.rackemann.com

November 18, 2004

Honorable Alessandro A. Iuppa
Superintendent
State of Maine
Bureau of Insurance
124 Northern Avenue
Gardiner, ME 04345

Honorable Julianne M. Bowler
Commissioner of Insurance
Commonwealth of Massachusetts
One South Station
Boston, MA 02110

Honorable Paula A. Flowers
Commissioner
State of Tennessee
Department of Commerce and Insurance
500 James Robertson Parkway - 5th Floor
Davy Crockett Tower
Nashville, TN 37243-1162

To:  The Chief Insurance Regulator of Each of the Jurisdictions Participating in the
Targeted (Disability Income) Multistate Examination

Dear Superintendent Iuppa, Commissioner Bowler, Commissioner Flowers and the Chief Insurance Regulators of the Participating States:

Pursuant to the authority granted by Section 24-A *Maine Revised Statutes Annotated*, Chapter 175 *Massachusetts General Laws* Section 4 and *Tenn. Code Ann.* § 56-1-408, your instructions, and in accordance with the *NAIC Handbook on Market Conduct Examinations*, a targeted multistate examination has been conducted of the disability income claim handling practices of:

**Unum Life Insurance Company of America (□Unum□)**
**The Paul Revere Life Insurance Company (□Revere□)**
**Provident Life and Accident Insurance Company (□Provident□)**

*Insurance Model Act* (1972) or *NAIC Claims Settlement Practices Model Act* (1990) (collectively, the ☐Model Act☐), and particularly, as defined in ME. REV. STAT. ANN. tit. 24-A, § 2164-D(3), (4) & (5); MASS. GEN. LAWS ch. 176D, § 3; and TENN. CODE ANN. § 56-8-104(8). The claim file reviews were conducted in the Worcester, Massachusetts and Glendale, California offices of the Companies during the months of June, November and December 2003 and April 2004.

### Profile of the Companies

Unum, Revere and Provident are subsidiaries of UnumProvident Corporation ("the Parent Company"), a Delaware corporation. The Parent Company is the result of a merger between Unum Corporation and Provident Companies, Inc. on June 30, 1999. Previously, on March 27, 1997, Provident Companies, Inc. had acquired The Paul Revere Corporation. The four primary operations centers for the Companies are located in Chattanooga, Tennessee, Portland, Maine, Worcester, Massachusetts and Glendale, California.

Unum, a Maine corporation, primarily markets short term disability and group and individual long term disability insurance as well as long term care insurance and group life insurance. It is licensed to transact business in the District of Columbia and all states, except New York. Revere, a Massachusetts corporation, primarily markets individual long term disability insurance. Revere is licensed to transact business in all fifty states and the District of Columbia. Provident, a Tennessee corporation, primarily markets individual long term disability insurance as well as life insurance through an employee-paid voluntary benefits program. It is licensed to transact business in the District of Columbia and all states, except New York.

The Parent Company uses common management and processes in the administration of the business for Unum, Revere and Provident as well as for its New York subsidiary, First Unum Life Insurance Company. Specifically, the UnumProvident Companies adjust claims for each member insurer from common locations using common procedures. The issues identified by the Multistate Examination are therefore assumed to also be present for each member company. The Companies and their New York affiliate are ranked first in market share☐based on annual premium☐in both IDI and LTD insurance and in group short term disability insurance, according to the 2003 JHA U.S. Group Disability Market Survey and the JHA 2003 U.S. Individual Disability Market Survey published in April 2004.

### Claim Selection Methodology

The multistate examination team requested the Companies to provide a comprehensive database including all claims closed during 2002. Initially, 300 claim files randomly selected from IDI and LTD claims closed during 2002, or for which benefit determinations were appealed or litigated during 2002, or claims open as of year-end 2002 were reviewed (the ☐Initial Review☐). The Initial Review comprised 100 claims each for Unum, Revere and Provident. The proportion of selected IDI and LTD claims was based on the relative reported reserves for each company as of December 31, 2002. Based upon representations by the Companies that a number of changes in claim administration were implemented during 2003, the examination team subsequently reviewed 75 claim files (25 each for Unum, Revere and Provident) which were randomly selected from the Companies☐ IDI and LTD claims for which benefit determinations were <u>first</u> appealed during the period of December 2003 through February 2004 (☐the Follow-up Review☐). Exhibit ☐A☐ depicts the distribution of such claims by company, by line of

business and by category for both the Initial Review and the Follow-up Review, including the total number of claims in the population, and the claims randomly selected for review. Exhibit □B□ depicts the distribution of the claims included in the Initial Review by the state of residence of the claimant. Exhibit □C□ depicts the distribution of the claims included in the Follow-up Review by the state of residence of the claimant.

## Areas of Concern

The Initial Review of 299 claim files (the Companies were not able to locate one claim file which had been selected for review) noted several general areas of concern, which applied to the Companies□ handling of both IDI and LTD claims. The examination team identified no material differences in claim handling among the individual companies or among their claim offices. The general areas of concern included the following:

1. <u>Excessive reliance upon in-house medical professionals</u>: The Companies have invested significant resources in the creation of a staff of physicians and nurses whose function is to provide support to and education of claim handling personnel. These in-house medical professionals include both full-time and part-time employees. The Companies also use the services of medical professionals who are independent contractors. These medical professionals review medical records of claimants and provide interpretation and analysis of such records to the claim staff who are ultimately responsible for making the claims decisions. In certain instances, in-house medical professionals will interact by telephone or by correspondence with attending physicians or other treatment providers of the claimants. In so doing, their objective is to determine whether sufficient medical evidence exists for restrictions and/or limitations which will be used to determine if the claimant meets the policy□s definition for total, partial or residual disability. In-house medical professionals do not examine or otherwise interact with claimants directly. The Companies□ insurance contracts generally allow the Companies to require claimants to submit to an independent medical examination (□IME□) conducted by a physician of the Companies□ choice. The examination team identified numerous instances in which the Companies relied heavily upon the analysis of their in-house medical professionals, and refrained from securing an IME. In many such instances, the Companies discounted or disputed the opinions of claimants□ attending physicians, but chose not to invoke the requirement that the claimant attend an IME. Where there is conflicting medical evidence or conflicting medical opinions with respect to a claimant□s eligibility for benefits, the Companies have the ability to invoke the policy provision and obtain an IME, and should do so.

2. <u>Unfair construction of attending physician or IME reports</u>: The Companies□ excessive reliance upon in-house medical professionals also suggests the Companies□ employment of such professionals often resulted in a Company bias and the inappropriate interpretation or construction of medical reports, to the detriment of claimants. In certain instances, this bias was reflected in the interpretation of attending physicians□ statements or medical records supplied by attending physicians. In other instances in which the Companies had obtained an IME, the reports supplied by the IME providers were narrowly or even incorrectly construed. The bias of the in-house medical professionals was also reflected in attempts to focus upon any apparent inconsistencies in the medical records or other information supplied by claimants, rather than attempt to derive a thorough understanding of the claimant□s medical condition.

3. <u>Failure to evaluate the totality of the claimant□s medical condition</u>: The examination team identified instances in which claimants who suffered from multiple medical conditions were denied

benefits as a result of the Companies☐ apparent failure to properly evaluate the cumulative effects of such conditions. In some instances, the Companies☐ failure to properly evaluate such ☐co-morbid☐ conditions appeared to stem from an excessively narrow focus upon the specific medical condition for which benefits had originally been sought by the claimant. By way of example, certain claimants exhibited a psychological ☐overlay☐ which was related to or may have resulted from an underlying medical condition. Although the Companies☐ claim handling may have included an evaluation of each separate condition, there was an insufficient effort made to assess the disabling effects of the conditions cumulatively.

4. <u>Inappropriate burden placed on claimants to justify eligibility for benefits</u>: The examination team identified a significant number of instances in which benefits were denied by the Companies on the grounds that the claimant had failed to provide ☐objective evidence☐ of a disabling condition. The Companies☐ policy forms do not require the claimant to provide such evidence. Alternatively, the Companies in certain instances denied eligibility for benefits on the grounds that the claimant had failed to submit particular medical test results which were deemed by the Companies to be critical to an evaluation of the claim. In such instances, the Companies could have obtained such test results by ordering an IME and requesting that such tests be performed by the IME provider. In general, the examination team found evidence of the Companies☐ effort to ☐shift☐ the burden of responsibility to the claimant to provide medical or other records in support of the claim, rather than obtain such records through the use of authorizations executed by the claimant. These practices are particularly of concern for claimants whose medical conditions may be interfering with their ability to interact with the Companies☐ staff in the handling of their claims.

Following completion of the Initial Review, representatives of the Lead States and the examination team met with representatives of the Companies in February 2004 to review the foregoing areas of concern as they related to specific claims which had been identified for discussion. After additional explanation was provided by the Companies, the examiners and the Lead States concluded that the level of claim handling errors identified was sufficient to merit further review and regulatory action.

Following that meeting, the Lead States concluded that the examination team should perform the Follow-up Review. The objective of the Follow-up Review was to assess the impact of claim administration changes reportedly implemented by the Companies during 2003, specifically with respect to the areas of concern. For that reason, 75 claim files were randomly selected from the population of claims for which a first appeal of an adverse claim determination had been filed during the three month period from December 1, 2003 ☐ February 29, 2004. Following completion of the Follow-up Review, representatives of the Lead States and the examination team again met with representatives of the Companies to review areas of concern as they related to specific claims which had been identified for discussion. After additional explanation was provided by the Companies, the examiners and the Lead States concluded that the level of claim handling errors identified was sufficient to merit further regulatory action.

After consultation with the Companies☐ senior management and the Board of Directors of the Parent Company, agreement in principle was reached between the Lead States and the Companies on the Plan of Corrective Action described below. This agreement obviated the need for additional investigation review of a larger claim sample, specific claim findings or reaching a formal conclusion concerning the examination objective, thereby assuring, for the benefit of the Companies☐ policyholders, prompt

implementation of a reassessment plan, changes in corporate governance and changes in claim handling procedures. All of these steps are described in greater detail in the attached Regulatory Settlement Agreement and implementing Consent Orders.

## Plan of Corrective Action

The Lead States have designed a Plan of Corrective Action (□the Plan□) with the Companies and their New York affiliate, to address the concerns raised by the examination. The Plan will be implemented through a regulatory settlement agreement or consent orders (collectively, □Agreement□) entered into by each of the Companies with its Lead State regulator and subscribed to by at least two-thirds of the Participating States, unless a lesser number is agreed to by the Companies, and the United States Department of Labor. (Once the Agreement becomes effective, the Lead States are thereafter referred to as Lead Regulators and the subscribing Participating States as Participating Regulators.) In addition, the Companies□ New York affiliate, First Unum Life Insurance Company, will enter into a similar agreement with the New York Superintendent of Insurance. This Agreement is supported by the Office of the Attorney General of the State of New York. The Agreement is included herewith as Exhibit □D□, "E", and "F". The Agreement provides for a penalty of $15,000,000, will provide for the assessment of substantial additional fines or other significant regulatory action should the Companies fail to comply with their terms, including the accomplishment of specified improvements in claim administration established in such Agreement. The Lead Regulators will monitor the Companies□ (including their New York affiliate) compliance with the terms of the Agreement at the Companies□ cost through an established framework of quarterly reports and meetings as well as periodic examination of the reassessment process or general claim handling, and will conduct a full re-examination of the issues addressed by this examination within twenty-four months of the Implementation Date of the Agreement.

The most significant provisions of the Agreement are the following:

A. Claim Reassessment Process: The Companies will form a new Claim Reassessment Unit located primarily in their Worcester, Massachusetts and Portland, Maine offices (IDI and LTD claims, respectively), for the purpose of providing a □de novo□ review of claims previously denied or terminated pursuant to a review procedure approved by the Lead Regulators. Written notice of this reassessment process will be provided to eligible claimants (as outlined in the Agreement), representing approximately 200,000 claims, whose IDI or LTD insurance claims were denied or whose benefits were terminated on or after January 1, 2000 and prior to the Implementation Date (as defined in the Agreement). The reassessment process will be open to eligible claimants who elect to participate, as well as any other claimants who indicate an interest in participation provided that the claim denial or termination of benefits took place no earlier than January 1, 1997. The Companies□ performance will be subject to regulatory scrutiny and monitoring, and the claim reassessment process will be subjected to further independent review by agents of the Lead Regulators.

B. Changes in Claim Organization and Procedures: The Companies will implement changes to its claim organization and claim procedures with the following objectives:

- The engagement of experienced claim personnel at the earliest possible stage of claim reviews
- Increased emphasis upon claim staff accountability for compliance with the terms of insurance policies and applicable law

- Increased involvement of higher levels of claim management staff in each claim denial or claim termination decision
- Creation of a separate compliance/accountability function at the claim denial and claim termination level
- Assurance that co-morbid conditions are properly evaluated at every level of claim review
- Increased utilization of IME☐s
- Additional compliance training for all claim staff, with emphasis upon the results of the multistate examination, the Plan, and the NAIC Unfair Claim Settlement Practices Act; and
- Additional training for group policyholder human resources personnel so as to better facilitate the process for LTD claims

C. <u>Changes in corporate governance</u>: The Companies will address regulatory concerns regarding corporate control issues by implementation of the following changes:

- The Board of Directors of the Parent Company will be expanded by three members, each of which will have significant insurance industry or insurance regulatory experience (two will have regulatory experience); each candidate will be approved by the Lead States and by the DOL
- The Audit Committee of the Board of Directors will be expanded by one member; at least one of the new members of the Board of Directors will be appointed to the Audit Committee
- The Board of Directors will establish a new Regulatory Compliance Committee, comprised of two of the new members of the Board, and three existing independent directors; the Regulatory Compliance Committee will have responsibility for monitoring compliance with the Plan and other compliance-related oversight functions; and
- The Companies will create a Regulatory Compliance Unit, which will report directly to the Regulatory Compliance Committee; the Regulatory Compliance Unit will monitor compliance with the Plan (including the functions of the Claim Reassessment Unit) through the performance of periodic audits, provide assistance to claimants to ease and facilitate the claim submission process, and gather data for the Lead States☐ ongoing monitoring of compliance with the Plan

D. <u>Quarterly Meetings between the Lead Regulators and the Companies</u>:

The Lead Regulators and the DOL will meet separately with the Regulatory Compliance Committee of the Parent Company and with senior management of the Companies on a quarterly basis, to evaluate compliance with the Plan. Participating States will be updated quarterly by the Lead Regulators, through the NAIC.

**Report Submission**

The report of examination is herewith respectfully submitted.

Sincerely,

|  | Pending | 6,087 | 6 |  | Pending |  |  |
|---|---|---|---|---|---|---|---|
|  | Closed | 2,232 | 5 |  | Closed |  |  |
|  | Appeals | 217 | 6 |  | Appeals | 20 | 6 |
|  | Sub-total | 8,794 | 23 |  | Sub-total | 20 | 6 |
|  |  |  |  |  |  |  |  |
| **TOTALS** |  | 154,508 | 100 | **TOTALS** |  | 1,312 | 25 |

| *Provident Life and Accident Insurance Company* | | | | *Provident Life and Accident Insurance Company* | | | |
|---|---|---|---|---|---|---|---|
| **Initial Review** | | | | **Follow-up Review** | | | |
| Line of Business | Category | Claims for Period | Reviewed | Line of Business | Category | Claims for Period | Reviewed |
| Group LTD | Litigated | 186 | 5* | Group LTD | Litigated |  |  |
|  | Pending | 9,049 | 5 |  | Pending |  |  |
|  | Closed | 4,872 | 5 |  | Closed |  |  |
|  | Appeals | 1,406 | 5 |  | Appeals | 118 | 5 |
|  | Sub-total | 15,513 | 20 |  | Sub-total | 118 | 5 |
| Individual DI | Litigated | 369 | 20* | Individual DI | Litigated |  |  |
|  | Pending | 10,445 | 20 |  | Pending |  |  |
|  | Closed | 7,549 | 20 |  | Closed |  |  |
|  | Appeals | 364 | 20 |  | Appeals | 52 | 20 |
|  | Sub-total | 18,727 | 80 |  | Sub-total | 52 | 20 |
|  |  |  |  |  |  |  |  |
| **TOTALS** |  | 34,240 | 100 | **TOTALS** |  | 170 | 25 |

* 25 Litigated files taken from 50 files provided in the 2002 Tennessee financial and market conduct exam

| *Paul Revere Life Insurance Company* | | | | *Paul Revere Life Insurance Company* | | | |
|---|---|---|---|---|---|---|---|
| **Initial Review** | | | | **Follow-up Review** | | | |
| Line of Business | Category | Claims for | Reviewed | Line of Business | Category | Claims for | Reviewed |

|  |  | Period |  |  |  | Period |  |
|---|---|---|---|---|---|---|---|
| Group LTD | Litigated |  |  | Group LTD | Litigated Closed |  |  |
|  | Pending(Open) |  |  |  | Pending(Open) |  |  |
|  | Closed |  |  |  | Closed |  |  |
|  | Appeals |  |  |  | Appeals | 58 |  |
|  | Sub-total | 0 | 0 |  | Sub-total | 58 | 0 |
| Individual DI | Litigated | 284 | 25 | Individual DI | Litigated Closed |  |  |
|  | Pending(Open) | 7,750 | 25 |  | Pending(Open) |  |  |
|  | Closed | 3,859 | 25 |  | Closed |  |  |
|  | Appeals | 200 | 25 |  | Appeals | 34 | 25 |
|  | Sub-total | 12,093 | 100 |  | Sub-total | 34 | 25 |
| TOTALS |  | 12,093 | 100 | TOTALS |  | 92 | 25 |

Exhibit B

*Distribution of UnumProvident Claim Selections by State (Initial Claim Review)*

| State | Code | Revere - Individual | Unum- Individual | Unum- Group | Provident Individual | Provident- Group | Provident- Litigation | Total |
|---|---|---|---|---|---|---|---|---|
| ALABAMA | AL | 0 |  | 1 | 2 |  | 1 | 4 |
| ALASKA | AK | 0 |  |  |  |  |  | 0 |
| ARIZONA | AZ | 1 |  | 1 | 2 |  |  | 4 |
| ARKANSAS | AR | 0 |  |  |  |  |  | 0 |
| CALIFORNIA | CA | 9 | 1 | 9 | 4 | 1 | 5 | 29 |
| COLORADO | CO | 3 |  |  | 1 | 1 |  | 5 |
| CONNECTICUT | CT | 1 |  | 1 | 1 |  |  | 3 |
| DELAWARE | DE | 3 |  |  |  |  |  | 3 |
| DISTRICT OF COL | DC | 1 |  | 1 |  |  |  | 2 |
| FLORIDA | FL | 8 | 4 | 5 | 7 | 1 | 5 | 30 |
| GEORGIA | GA | 3 |  | 4 | 4 | 1 |  | 12 |
| HAWAII | HI | 1 |  |  |  |  |  | 1 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| IDAHO | ID | 0 | | | | | | 0 |
| ILLINOIS | IL | 5 | | 2 | | | 1 | 8 |
| INDIANA | IN | 0 | | 3 | | | | 3 |
| IOWA | IA | 2 | | | | | | 2 |
| KANSAS | KS | 1 | | 1 | | | | 2 |
| KENTUCKY | KY | 2 | | 2 | 1 | 1 | 1 | 7 |
| LOUISIANA | LA | 2 | 1 | 1 | 2 | | | 6 |
| MAINE | ME | 0 | | 7 | | | 1 | 8 |
| MARYLAND | MD | 1 | | 1 | 1 | 1 | 1 | 5 |
| MASSACHUSETTS | MA | 4 | | 2 | 2 | 1 | | 9 |
| MICHIGAN | MI | 0 | 1 | 2 | 6 | 1 | 1 | 11 |
| MINNESOTA | MN | 0 | 1 | | | | | 1 |
| MISSISSIPPI | MS | 1 | | | 1 | | 1 | 3 |
| MISSOURI | MO | 1 | | 1 | | | | 2 |
| MONTANA | MT | 0 | | | | | | 0 |
| NEBRASKA | NE | 0 | | 2 | | | | 2 |
| NEVADA | NV | 1 | | 1 | | | | 2 |
| NEW HAMPSHIRE | NH | 0 | | 2 | | | | 2 |
| NEW JERSEY | NJ | 10 | 4 | 1 | 3 | | | 18 |
| NEW MEXICO | NM | 1 | | | | | | 1 |
| NEW YORK | NY | 11 | | 2 | | 2 | | 15 |
| NORTH CAROLINA | NC | 4 | | 2 | 1 | 2 | 1 | 10 |
| NORTH DAKOTA | ND | 0 | | | | | | 0 |
| OHIO | OH | 3 | | 4 | 1 | | | 8 |
| OKLAHOMA | OK | 1 | | | 2 | | | 3 |
| OREGON | OR | 1 | 2 | | | | | 3 |
| PENNSYLVANIA | PA | 3 | 4 | 4 | 2 | 1 | 1 | 15 |
| RHODE ISLAND | RI | 2 | 1 | | 1 | | | 4 |
| SOUTH CAROLINA | SC | 1 | | 4 | 1 | 1 | | 7 |
| SOUTH DAKOTA | SD | 0 | | | | | | 0 |
| TENNESSEE | TN | 5 | 1 | 2 | 5 | 1 | 3 | 17 |
| TEXAS | TX | 0 | 1 | 6 | 6 | | | 13 |
| UTAH | UT | 0 | | | | | 1 | 1 |

| State | Code | | | | | | |
|---|---|---|---|---|---|---|---|
| VERMONT | VT | 0 | 1 | | 1 | | | 2 |
| VIRGINIA | VA | 2 | | | 1 | | 1 | 4 |
| WASHINGTON | WA | 2 | 1 | 1 | 1 | | 1 | 6 |
| WEST VIRGINIA | WV | 2 | | | | | | 2 |
| WISCONSIN | WI | 2 | | 2 | 1 | | | 5 |
| WYOMING | WY | 0 | | | | | | 0 |
| | | | | | | | | |
| Total | | 100 | 23 | 77 | 60 | 15 | 25 | 300 |

Exhibit C

*Distribution of UnumProvident Claim Selections by State (Follow-Up Claim Review)*

| State | Code | Revere - Individual | Unum- Individual | Unum- Group | Provident☐ Individual | Provident- Group | Total |
|---|---|---|---|---|---|---|---|
| ALABAMA | AL | | | | 1 | | 1 |
| ALASKA | AK | | | | | | 0 |
| ARIZONA | AZ | | | | | | 0 |
| ARKANSAS | AR | | | | | | 0 |
| CALIFORNIA | CA | 3 | 1 | 2 | 2 | | 8 |
| COLORADO | CO | | | | | | 0 |
| CONNECTICUT | CT | 1 | | 1 | | | 2 |
| DELAWARE | DE | | | 1 | | | 1 |
| DISTRICT OF COL | DC | | | 1 | | | 1 |
| FLORIDA | FL | 3 | | 1 | 1 | 1 | 6 |
| GEORGIA | GA | | | | | | 0 |
| HAWAII | HI | | | | | | 0 |
| IDAHO | ID | | | | 1 | | 1 |
| ILLINOIS | IL | 3 | 1 | | | | 4 |
| INDIANA | IN | | | | 1 | | 1 |
| IOWA | IA | | | 1 | | | 1 |
| KANSAS | KS | | | | | | 0 |
| KENTUCKY | KY | 1 | | 1 | 2 | | 4 |
| LOUISIANA | LA | | | 1 | | | 1 |
| MAINE | ME | 1 | | 2 | | | 3 |

| State | Abbr | | | | | | Total |
|---|---|---|---|---|---|---|---|
| MARYLAND | MD | | | | | | 0 |
| MASSACHUSETTS | MA | 1 | | | 1 | | 2 |
| MICHIGAN | MI | 1 | | | 2 | 1 | 4 |
| MINNESOTA | MN | | | 1 | | | 1 |
| MISSISSIPPI | MS | | | | | | 0 |
| MISSOURI | MO | | | | | | 0 |
| MONTANA | MT | | | | | | 0 |
| NEBRASKA | NE | | | | | | 0 |
| NEVADA | NV | | | | | | 0 |
| NEW HAMPSHIRE | NH | | | | | | 0 |
| NEW JERSEY | NJ | 1 | | 1 | 1 | 1 | 4 |
| NEW MEXICO | NM | | | | | | 0 |
| NEW YORK | NY | 2 | 2 | 1 | 2 | | 7 |
| NORTH CAROLINA | NC | 1 | | 1 | 1 | | 3 |
| NORTH DAKOTA | ND | | | | | | 0 |
| OHIO | OH | 1 | 2 | | 1 | | 4 |
| OKLAHOMA | OK | | | | | | 0 |
| OREGON | OR | | | | | | 0 |
| PENNSYLVANIA | PA | 3 | | 1 | | | 4 |
| RHODE ISLAND | RI | | | | | | 0 |
| SOUTH CAROLINA | SC | | | 1 | | 1 | 2 |
| SOUTH DAKOTA | SD | | | | | | 0 |
| TENNESSEE | TN | 1 | | 1 | 1 | | 3 |
| TEXAS | TX | 1 | | 1 | | | 2 |
| UTAH | UT | | | | | | 0 |
| VERMONT | VT | | | | | | 0 |
| VIRGINIA | VA | | | | | 1 | 1 |
| WASHINGTON | WA | 1 | | | 3 | | 4 |
| WEST VIRGINIA | WV | | | | | | 0 |
| WISCONSIN | WI | | | | | | 0 |
| WYOMING | WY | | | | | | 0 |
| Total | | 25 | 6 | 19 | 20 | 5 | 75 |